## Case No. 12,331.

### SANTIAGO v. MORGAN et al.

[Hoff. Op. 447.]

District Court, N. D. California. July 9, 1851.

PILOTS — NEGLIGENCE — ASSOCIATION OF PILOTS — PARTNERSHIP.

[1. A licensed pilot, who, with the wind blowing off a shoal in fair weather and open daylight, runs his vessel upon it, is liable for resulting damages; and it is no defense that the vessel was unprovided with a hawser, by means of which she might have been warped off without injury.]

[2. An association of licensed pilots owning a boat, in the name of which bills for services of the individuals are made out, collected, and credited, and to which moneys paid to the individuals are turned over, the profits, after deducting expenses, being equally divided, is a partnership, and liable for the misfeasance or negligence of one of such pilots while employed in piloting a vessel.]

In admiralty.

E. Cook, for libelant.

Jno. H. Saunders, for respondents.

HOFFMAN, District Judge. This was a libel in personam for a marine tort. The injury complained of, is the unskilfulness and negligence of the respondent Morgan, in running the ship Eliza, under his charge as a licensed pilot, on the Tonquin Shoal in this harbor. It seems that Morgan came on board the ship on the morning of the 4th January. The vessel had previously sustained considerable injury from a collision the night before, and when boarded by the pilot she was in a situation of some danger. She was, however, extricated and got under way by the pilot without any difficulty or extraordinary exertion. She commenced her course, and about dusk was run on the shoal, and sustained the damage for which this action is brought.

Much testimony was taken at the hearing which I do not think it necessary minutely to consider. It is asserted by those on board the Eliza, that the wind was free, being from the southwest; while the witnesses on the part of the respondents maintain that it was from the southeast. The course made by the vessel, from the point where she was got under way to the shoal where she struck, was not far from east southeast, and it is somewhat difficult to perceive how that course could have been made with a southeast wind; the pilots, however, assert, by striking the lee bow of the vessel to force her to windward, and the court cannot disregard the opinion of experts on such a point. But, in the view I take of the case, the inquiry is immaterial. It is on all sides conceded, that the wind was such as enabled the vessel to make a direct and safe course to her anchorage. Assuming the wind to have been southeast, the difficulty was not to keep off the shoal, but to get on it. It seems to be established, that the usual and proper course of the vessel was along the shoal on which she struck. The pilots, it is true, testify more strongly. They

assert that the shoal is by no means dangerous: that vessels touch upon it almost daily; and that they should regard the chances of striking upon it as deserving of little consideration. But this court cannot consider running upon any shoal as the usual and proper mode of navigating vessels in or out of this harbor. It must regard the pilot as bound to avoid running a ship ashore, even though, in his opinion, it may be done without danger; and if he, relying upon previous escapes, should by undue want of caution incur such a hazard, the risk and the loss should be his own. That such an accident is not always unattended with danger, the experience of the Eliza sufficiently establishes.

But it is alleged that the immediate cause of the accident was the vessel's being taken aback, and it was supposed by the counsel for the respondents, that she had already passed the shoal an hour and a half, and that on being taken aback, she drifted astern and grounded. Without adverting to the gross negligence on the part of the pilot, involved in the supposition, that on good anchorage ground, in the immediate vicinity of vessels safely moored, he suffered his ship to drift upon a shoal he had passed an hour and a half before, it is enough to say, that there is no evidence to sustain the hypothesis. By the testimony of the respondents' witnesses, the wind was from the southeast; but they all agree that on approaching the shore the wind hauls more to the southward. This change of the wind is in some degree relied on when accounting for the course actually made by the vessel. The shoal lay to the southward of the course of the vessel. It is evident that if the wind hauled to the southward, it would become more free instead of heading off the ship.

It is asserted that the ship was in a condition so disabled as to be peculiarly exposed to such an accident. But she was in the same condition when the pilot took charge of her, and it would have been easy for him, knowing that condition, to have avoided all possibility of danger. His course, it is true, lay along or near the shoal, but not on it. Nor can I perceive how I can acquit a pilot of negligence who, with the wind blowing off a shoal, in fair weather and open daylight, runs his ship upon it. It was exactly the kind of danger to enable vessels to avoid which his services were required and his office established by law. Much stress was laid on the fact that the ship was unprovided with a hawser, by means of which, it is suggested, she might have been warped off the shoal. But that experiment was tried by Capt. Simpton the next morning without success, nor can the court say whether an effort made immediately after the accident might not have had the same result. It is to be remembered, also, that Capt. Simpton found means to run a line to the shore by using the clew lines and other ropes for the purpose,—an expedient which does not seem to have occurred to Mr.

Morgan. But this action is not brought for omitting to warp the ship off the shoal, but for running her on it. The pilot ought to have known whether there was a hawser on board before he ran the risk of putting his ship on shore, relying on the hawser to extricate him without injury. If he were guilty of negligence in getting on the shoal, it does not seem to lie in his mouth to say that if she had some other equipments, she might possibly have escaped with less damage. I have not thought it necessary to consider what is the precise degree of liability the law fixes upon a pilot. For I think he is, in this case, liable, under either view of the law that has been taken.

The only remaining point to be considered is whether these defendants are jointly liable with Mr. Morgan as partners. It appears in evidence that the pilots are divided into "associations of six pilots each." Each of these associations owns a boat with which the business is conducted. It is proved that all the moneys paid to individual pilots belonging to a boat are brought in to a common agent and credited to the boat. The profits, after deducting expenses, were equally divided amongst those belonging to the boat. It further appears that bills for pilotage by individual pilots were made out in the name of the association, collected by the agent, and credited to the boat. Under these circumstances I am unable to conceive any definition of a partnership which would not include an association like the one described. Any member of it would be clearly entitled to an account, and each participated in the profits, as such, and was liable for his proportion of the losses. It follows that the partnership must be liable for malfeasance or negligence committed by one of the partners in the course of his employment and within the scope, and while engaged in performing the business of the partnership. 11 Wend. 571, 18 Warden. 175.

No evidence of the amount of injury sustained by the libellants was given at the trial, that inquiry having been reserved by consent until the question of liability should be determined. It must therefore be referred to the commissioner to take testimony on that point, and report the result to the court.